IN THE SUPREME COURT OF THE STATE OF MONTANA

No. AF 08-0203

———————————

IN THE MATTER OF THE 2008 MONTANA
CODE OF JUDICIAL CONDUCT

O R D E R

———————————

In June of 2003, observing that Montana was the only jurisdiction in the nation which continued to subscribe to the Canons of Judicial Ethics, this Court established a Commission on the Code of Judicial Conduct (the Commission) to study and consider the adoption of a version of the American Bar Association Model Code of Judicial Conduct (ABA Code). The Court determined that adopting a version of the ABA Code would serve the current needs of Montana's judicial branch, provide uniformity, and provide access to a national database of decisions and ethics opinions.

The Commission was chaired by Justice Patricia Cotter and included as its members Chief Justice Karla Gray, Justice James C. Nelson, Justice John Warner, Hon. Katherine Curtis, Hon. Blair Jones, Hon. Karen Orzech, G. Lewis Scott, Esq., Richard J. Dolan, Esq., Professor David J. Patterson, and Holly Kaleczyc.

The Commission's work was delayed while the ABA undertook a significant revision of the existing ABA Model Code of Judicial Conduct. It was the desire of the Commission to tailor the Montana Code as closely as possible to the ABA national code, as revised, while adapting it to the realities of the operation of the judicial system and judicial elections in the state of Montana. Once the ABA Code was finalized, the Commission convened duly noticed open meetings on eight occasions. Ultimately, the Commission's recommendations for the Montana Code of Judicial Conduct were approved by the members of the Commission, and then submitted for comment to the

1

members of the judiciary and the members of the State Bar, with a comment period closing on June 18, 2008. Thereafter, the Commission revisited its recommendations in light of the comments received. Certain changes to the recommended rules were made as a result of the comments, and the final proposed Code was then presented to this Court for its review and approval. Having now considered the Commission's recommendations, and with our thanks and gratitude to the Commission for its hard work and service, we adopt the following Order:

IT IS HEREBY ORDERED that the 2008 Montana Code of Judicial Conduct, attached hereto as Exhibit A, is approved and adopted. The comments to the rules are not adopted as rules, but are provided for interpretation and guidance only. These rules shall be effective January 1, 2009.

IT IS FURTHER ORDERED that a copy of this Order, together with Concurrences and Dissent, and with the attached Exhibit A in Word and PDF document links, be electronically published on the website for the Judicial Branch, http://www.courts.mt.gov, and on the State Bar of Montana website, http://www.montanabar.org, and that a copy of this Order be published in the next available issue of *The Montana Lawyer*, the next *Lawyer's Deskbook and Directory*, and in the next available issue of the *Montana Reports*. Persons unable to access these documents electronically may request a paper copy of the same through the State Law Library, P.O. Box 203004, Helena, MT, 59620-3004 (406-444-1977) upon advance payment of reasonable photocopying and postage charges.

IT IS FURTHER ORDERED that the Clerk of this Court send a copy of this Order, together with Concurrences and Dissent and Exhibit A, either electronically or by U.S. mail to the following persons and organizations:

the Clerk of each District Court of the state of Montana;

each District Court Judge of the state of Montana;

the Judge of the Workers' Compensation Court;

the Chief Judge of the Water Court;

2

the State Bar of Montana;

the Supreme Court Administrator, who shall serve each of the judges of the Courts of Limited Jurisdiction;

the chairperson of the Commission on Courts of Limited Jurisdiction;

the Presidents of the Montana Judges' Association and the Montana Magistrates' Association;

the Presidents of the Clerk of Court's Association for the Clerks of the District Courts and the Clerks of the Courts of Limited Jurisdiction;

the Judicial Standards Commission for the state of Montana;

Greg Petesch, Code Commissioner and Director of Legal Services for the Montana Legislative Services Division; and

the Dean of the University of Montana School of Law.

DATED this 12th day of December, 2008.

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice W. William Leaphart, concurring.

I concur in the Court's adoption of the 2008 Montana Code of Judicial Conduct. I write separately to point out what I see as an internal inconsistency in Rule 3.6. We, as United States citizens have a constitutionally protected right to the freedom of association and the free exercise of religion. First Amendment, U.S. Const. Rule 3.6(A) restricts the freedom of association by requiring that a judge "shall not hold membership in any organization that practices invidious discrimination on the basis of race, sex, gender, religion, national origin, ethnicity or sexual orientation." Rule 3.6(C) however, provides that a judge's membership in a religious organization as a lawful exercise of the freedom of religion and is not a violation of this Rule.

It goes without saying that there are many religious organizations that discriminate on the basis of gender, race and/or sexual orientation. If, under the auspices of free exercise of religion, it is permissible to belong to a religious organization that discriminates against gays or prohibits women from being part of the church clergy, it would seem that the freedom of association would likewise allow one to belong to a nonreligious private club or "klan" that discriminates on the basis of race, gender or sexual orientation.

If, in the spirit of the Code of Judicial Conduct, affiliation with entities that engage in discriminatory conduct is abhorrent, the Code should be consistent in its prohibition and not carve out an exception for organizations that practice invidious discrimination under the name of religion.

/S/ W. WILLIAM LEAPHART

4

Justice Jim Rice, concurring in part and dissenting in part.

I join the Court in expressing thanks to the Commission for its work in crafting a code of judicial conduct for Montana. I support adoption of the Code and have only a couple concerns, as follows:

1. Rule 2.11. Although I have reservations about this Rule in light of the U.S. Supreme Court's decision in *Republican Party v. White*, I accept it as a good faith effort to provide a rule which conforms with *White*, as represented in the ABA's Annotations to the Model Code, Canon 5A(3)(d), p. 355, and thus support the Rule as written. In light of pending litigation, I would caution that the Rule may need to be revisited to accommodate future court decisions.

2. Rule 3.6(A). This Rule prohibits a judge from holding membership in an organization which practices discrimination (see also Comment [3] to Rule 3.1, which similarly provides that "a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination."). These rules list out the bases on which the organizations may not discriminate, including sexual orientation. Unlike the other listed bases, sexual orientation is not a protected class under Montana law (see generally, Title 49, MCA) and the extension of such protection is a controversial public policy issue, as evidenced by legislative measures and voter initiatives addressing aspects of the issue here and around the country. Montana's most recent statement related to the issue was the adoption in 2004 of CI-96, a constitutional prohibition on same-sex marriage. For these reasons, I believe we should

use the law as our guide, and not restrict a judge's constitutional right to be a member of an organization that may be perceived as practicing discrimination, but on a basis which is not prohibited by law. The anomaly here created is that a judge would be subject to sanction because of membership in an organization which is doing nothing illegal. Although the Code contains a religious exemption, some nonreligious organizations also restrict membership for legal reasons. If Montana law would change in this regard, that would present a different situation.

3. Rule 4.1(A)(5). I would delete this provision from the Code and allow judges or judicial candidates to attend events sponsored by a partisan political candidate. I believe such practices reflect the reality of Montana culture, particularly within our many small, rural communities. There, judicial candidates often buy tickets or appear at a local politician's event, and do so without endorsing the candidate. I recall attending a Republican dinner in a rural county which was also attended by a large contingent of local Democrats. Everyone was grinning from ear to ear, because it was more about community than anything else. Further, events such as campaign visits by presidential candidates are often historical events which judges should be able to observe without fear of sanction.

/S/ JIM RICE

Justice John Warner joins in the concurrence and dissent of Justice Jim Rice.

I too thank the many that have worked very hard to draft long overdue updated Code of Judicial Conduct for Montana. It was truly a difficult task which was well performed. I understand that no written canons of judicial ethics can be perfect. I have every confidence that the Montana Judicial Standards Commission and this Court will interpret and apply the Code adopted today in a fair and reasonable manner, considering the myriad difficulties facing Montana's judicial officers, and to the benefit of the citizens of Montana. I join in Justice Rice's concurrence and dissent.


/S/ JOHN WARNER

**2008 MONTANA CODE OF JUDICIAL CONDUCT**

**TABLE OF CONTENTS**

PREAMBLE ............................................................................................................1
SCOPE ..................................................................................................................2
TERMINOLOGY ..................................................................................................3
APPLICATION ......................................................................................................6

**CANON 1**

A JUDGE SHALL UPHOLD AND PROMOTE THE INDEPENDENCE, INTEGRITY, AND IMPARTIALITY OF THE JUDICIARY, AND SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY.

RULE 1.1 Compliance with the Law.......................................................................7
RULE 1.2 Promoting Confidence in the Judiciary .................................................7
RULE 1.3 Avoiding Abuse of the Prestige of Judicial Office................................8

**CANON 2**

A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY, COMPETENTLY, AND DILIGENTLY.

RULE 2.1 Giving Precedence to the Duties of Judicial Office ...............................9
RULE 2.2 Impartiality and Fairness .......................................................................9
RULE 2.3 Bias, Prejudice, and Harassment .........................................................10
RULE 2.4 External Influences on Judicial Conduct..............................................11
RULE 2.5 Competence, Diligence, and Cooperation ............................................11
RULE 2.6 Ensuring the Right to Be Heard............................................................12
RULE 2.7 Responsibility to Decide.......................................................................13
RULE 2.8 Decorum, Demeanor, and Communication with Jurors .......................13
RULE 2.9 Ex Parte Communications; Investigations—Courts of Limited Jurisdiction ...............14
RULE 2.10 Ex Parte Communications—All Courts Except for Courts of Limited Jurisdiction..........................................................................................................16
RULE 2.11 Judicial Statements on Pending and Impending Cases........................17
RULE 2.12 Disqualification ..................................................................................18
RULE 2.13 Supervisory Duties .............................................................................21
RULE 2.14 Administrative Appointments ............................................................21
RULE 2.15 Disability and Impairment..................................................................22
RULE 2.16 Responding to Judicial and Lawyer Misconduct................................22
RULE 2.17 Cooperation with Disciplinary Authorities ........................................23

## CANON 3

A JUDGE SHALL CONDUCT THE JUDGE'S PERSONAL AND EXTRAJUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH THE OBLIGATIONS OF JUDICIAL OFFICE.

RULE 3.1 Extrajudicial Activities in General ................................................................24
RULE 3.2 Appearances before Governmental Bodies and Consultation with Government Officials....................................................................................................................25
RULE 3.3 Testifying as a Character Witness ................................................................26
RULE 3.4 Appointments to Governmental Positions....................................................26
RULE 3.5 Use of Nonpublic Information......................................................................26
RULE 3.6 Affiliation with Discriminatory Organizations ............................................27
RULE 3.7 Participation in Educational, Religious, Charitable, Fraternal, or Civic Organizations and Activities....................................................................................28
RULE 3.8 Appointments to Fiduciary Positions ...........................................................30
RULE 3.9 Service as Arbitrator or Mediator.................................................................30
RULE 3.10 Practice of Law............................................................................................31
RULE 3.11 Financial, Business, or Remunerative Activities........................................31
RULE 3.12 Compensation for Extrajudicial Activities .................................................32
RULE 3.13 Acceptance and Reporting of Gifts, Loans, Bequests, Benefits, or Other Things of Value......................................................................................................32
RULE 3.14 Reimbursement of Expenses and Waivers of Fees or Charges ..................34

## CANON 4

A JUDGE OR CANDIDATE FOR JUDICIAL OFFICE SHALL NOT ENGAGE IN POLITICAL OR CAMPAIGN ACTIVITY THAT IS INCONSISTENT WITH THE INDEPENDENCE, INTEGRITY, OR IMPARTIALITY OF THE JUDICIARY.

RULE 4.1 Political and Campaign Activities of Judges and Judicial Candidates in General .......36
RULE 4.2 Political and Campaign Activities of Judicial Candidates in Public Elections ............39
RULE 4.3 Activities of Candidates for Appointive Judicial Office ...............................41
RULE 4.4 Campaign Committees ..................................................................................41

# 2008 MONTANA CODE OF JUDICIAL CONDUCT


## PREAMBLE

[1] An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

[2] Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.

[3] The Code of Judicial Conduct establishes standards for the ethical conduct of judges and judicial candidates. It is not intended as an exhaustive guide for the conduct of judges and judicial candidates, who are governed in their judicial and personal conduct by general ethical standards as well as by the Code. The Code is intended, however, to provide guidance and assist judges in maintaining the highest standards of judicial and personal conduct, and to provide a basis for regulating their conduct through disciplinary agencies.

# SCOPE

[1] The Code of Judicial Conduct consists of four Canons, numbered Rules under each Canon, and Comments that generally follow and explain each Rule. Scope and Terminology paragraphs provide additional guidance in interpreting and applying the Code. An Application paragraph establishes when the various Rules apply to a judge or judicial candidate. The Code is not designed or intended as a basis for civil or criminal liability. Neither is it intended to be the basis for litigants to seek to change a judge's decision, to seek collateral remedies against each other, or to obtain tactical advantages in proceedings before a court.

[2] The Canons state overarching principles of judicial ethics that all judges must observe. Although a judge may be disciplined only for violating a Rule, the Canons provide important guidance in interpreting the Rules. Where a Rule contains a permissive term, such as "may" or "should," the conduct being addressed is committed to the personal and professional discretion of the judge or candidate in question, and no disciplinary action should be taken for action or inaction within the bounds of such discretion.

[3] The Comments that accompany the Rules serve two functions. First, they provide guidance regarding the purpose, meaning, and proper application of the Rules. They contain explanatory material and, in some instances, provide examples of permitted or prohibited conduct. Comments neither add to nor subtract from the binding obligations set forth in the Rules. Therefore, when a Comment contains the term "must," it does not mean that the Comment itself is binding or enforceable; it signifies that the Rule in question, properly understood, is obligatory as to the conduct at issue.

[4] Second, the Comments identify aspirational goals for judges. To implement fully the principles of this Code as articulated in the Canons, judges should strive to exceed the standards of conduct established by the Rules, holding themselves to the highest ethical standards and seeking to achieve those aspirational goals, thereby enhancing the dignity of the judicial office.

[5] The Rules of the Code of Judicial Conduct are rules of reason that should be applied consistent with constitutional requirements, statutes, other court rules, and decisional law, and with due regard for all relevant circumstances. The Rules should not be interpreted to impinge upon the essential independence of judges in making judicial decisions.

[6] Although the black letter of the Rules is binding and enforceable, it is not contemplated that every transgression will result in the imposition of discipline. Whether discipline should be imposed should be determined through a reasonable and reasoned application of the Rules, and should depend upon factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others.

# TERMINOLOGY

The first time any term listed below is used in any given Rule in its defined sense, it is followed by an asterisk (*).

**"Appropriate authority"** means the authority having responsibility for initiation of disciplinary process in connection with the violation to be reported.  See Rule 2.16.

**"Contribution"** means both financial and in-kind contributions, such as goods, professional or volunteer services, advertising, and other types of assistance, which, if obtained by the recipient otherwise, would require a financial expenditure.  See Rules 3.7, 4.1, and 4.4.

**"Courts of limited jurisdiction"** means justice courts, justice courts of record, city courts and municipal courts.  Where the context allows and for simplicity, the justices of the peace and judges of such courts may be collectively referred to as judges.  See Rules 2.9 and 2.10.

**"De minimis,"** in the context of interests pertaining to disqualification of a judge, means an insignificant interest that could not raise a reasonable question regarding the judge's impartiality.  See Rule 2.12.

**"Domestic partner"** means a person with whom another person maintains a household and an intimate relationship, other than a person to whom he or she is legally married.  See Rules 2.12, 3.13, and 3.14.

**"Economic interest"** means ownership of more than a de minimis legal or equitable interest.  Except for situations in which the judge participates in the management of such a legal or equitable interest, or the interest could be substantially affected by the outcome of a proceeding before a judge, it does not include:

(1) an interest in the individual holdings within a mutual or common investment fund;

(2) an interest in securities held by an educational, religious, charitable, fraternal, or civic organization in which the judge or the judge's spouse, domestic partner, parent, or child serves as a director, an officer, an advisor, or other participant;

(3) a deposit in a financial institution or deposits or proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests; or

(4) an interest in the issuer of government securities held by the judge.

See Rules 1.3, 2.12, and 3.2.

**"Ex parte communication"** is any oral communication to a judge concerning a pending or impending matter, outside the presence of all the parties to the proceeding or their attorneys or outside the confines of a duly noticed proceeding, or any written communication received by a judge that is not simultaneously provided to all parties or their attorneys.  See Rules 2.9 and 2.10.

3

**"Fiduciary"** includes relationships such as executor, administrator, trustee, or guardian. See Rules 2.12, 3.2, and 3.8.

**"Impartial," "impartiality,"** and **"impartially"** mean absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge. See Canons 1, 2, and 4, and Rules 1.2, 2.2, 2.9, 2.11, 2.12, 2.14, 3.1, 3.12, 3.13, 4.1, and 4.2.

**"Impending matter"** is a matter that is imminent or expected to occur in the near future. See Rule 2.9.

**"Impropriety"** includes conduct that violates the law, court rules, or provisions of this Code, and conduct that undermines a judge's independence, integrity, or impartiality. See Canon 1, and Rules 1.2 and 3.10.

**"Independence"** means a judge's freedom from influence or controls other than those established by law. See Canons 1 and 4, and Rules 1.2, 3.1, 3.12, 3.13, and 4.2.

**"Independent candidate"** means a candidate for a non-judicial public office who is not a member or representative of a political organization. See Rules 4.1 and 4.2.

**"Integrity"** means probity, fairness, honesty, uprightness, and soundness of character. See Canons 1 and 4, and Rules 1.2, 3.1, 3.12, 3.13, and 4.2.

**"Judicial candidate"** means any person, including a sitting judge, who is seeking selection for or retention in judicial office by election or appointment. A person becomes a candidate for judicial office as soon as he or she makes a public announcement of candidacy, declares or files as a candidate with the election or appointment authority, authorizes or, where permitted, engages in solicitation or acceptance of contributions or support, or is nominated for election or appointment to office. See Rules 2.12, 4.1, 4.2, and 4.4.

**"Knowingly," "knowledge," "known,"** and **"knows"** mean actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances. See Rules 2.12, 2.16, 2.17, 3.2, 3.5, 3.6, and 4.1.

**"Law"** encompasses court rules as well as statutes, constitutional provisions, and decisional law. See Rules 1.1, 2.1, 2.2, 2.6, 2.7, 2.9, 2.10, 3.1, 3.2, 3.4, 3.7, 3.9, 3.10, 3.12, 3.13, 3.14, 4.1, 4.2, and 4.4.

**"Member of the judge's family"** means a spouse, domestic partner, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship. See Rules 3.7, 3.8, 3.10, and 3.11.

**"Member of a judge's family residing in the judge's household"** means any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides in the judge's household. See Rules 2.12 and 3.13.

**"Nonpublic information"** means information that is not available to the public. Nonpublic information includes any information regarding rulings or decisions the court is inclined to or intends to make, and any communications shared among judges during the decision-making process. It may also include, but is not limited to, information that is sealed by statute or court order or impounded or communicated in camera, and information offered in grand jury proceedings, presentencing reports, dependency cases, or psychiatric reports. See Rule 3.5.

**"Partisan candidate"** means a candidate for public office who seeks election as a member of or representing a political organization. See Rules 4.1 and 4.2.

**"Pending matter"** is a matter that has commenced. A matter continues to be pending through any appellate process until final disposition. See Rules 2.9, 2.11, and 4.1.

**"Political organization"** means a political party or other group sponsored by or affiliated with a political party or candidate, the principal purpose of which is to further the election or appointment of candidates for political office. For purposes of this Code, the term does not include a judicial candidate's campaign committee created as authorized by Rule 4.4. See Rules 4.1, 4.2, and 4.3.

**"Public election"** includes primary and general elections, partisan elections, nonpartisan elections, and retention elections. See Rule 4.4.

**"Third degree of relationship"** includes the following persons: great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew, and niece. See Rule 2.12.

## APPLICATION

The Application paragraph establishes when the various Rules apply to a judge or judicial candidate.

## I. APPLICABILITY OF THIS CODE

(A) The provisions of this Code apply to justices of the supreme court, district court judges, the chief water judge, the workers compensation court judge, justices of the peace, municipal court judges, city court judges and judges of courts of limited jurisdiction created by the legislature, including judges pro tempore, as hereinafter set forth, and, where specifically indicated, to judicial candidates.

(B) The provisions of this Code do not apply to special masters, referees, administrative law judges, or persons appointed to perform quasi-judicial functions.

## II. JUDGE PRO TEMPORE

(A) A judge pro tempore is a person who, pursuant to the law, is called to serve temporarily as a judge.

(B) While presiding over any stage of a pending case under temporary appointment, a judge pro tempore must comply with this Code except for Rules 3.4, 3.7, 3.9, and 3.11(B).

## III. EFFECTIVE DATE—COMPLIANCE

(A) The provisions of this Code are effective on the date specified by the supreme court.

(B) A person to whom this Code becomes applicable shall comply immediately with its provisions, unless otherwise provided in this Code.

**A JUDGE SHALL UPHOLD AND PROMOTE THE INDEPENDENCE, INTEGRITY, AND IMPARTIALITY OF THE JUDICIARY, AND SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY.**

**RULE 1.1**
*Compliance with the Law*

**A judge shall comply with the law,\* including the Code of Judicial Conduct.**

**RULE 1.2**
*Promoting Confidence in the Judiciary*

**A judge shall act at all times in a manner that promotes public confidence in the independence,\* integrity,\* and impartiality\* of the judiciary, and shall avoid impropriety\* and the appearance of impropriety.**

**COMMENT**

[1] Public confidence in the judiciary is eroded by improper conduct and conduct that creates the appearance of impropriety. This principle applies to both the professional and personal conduct of a judge.

[2] A judge should expect to be the subject of public scrutiny that might be viewed as burdensome if applied to other citizens, and must accept the restrictions imposed by the Code.

[3] Conduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge undermines public confidence in the judiciary. Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms.

[4] Judges should participate in activities that promote ethical conduct among judges and lawyers, support professionalism within the judiciary and the legal profession, and promote access to justice for all.

[5] Actual improprieties include violations of law, court rules, or provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge.

[6] A judge should initiate and participate in community outreach activities for the purpose of promoting public understanding of and confidence in the administration of justice. In conducting such activities, the judge must act in a manner consistent with this Code.

**RULE 1.3**
*Avoiding Abuse of the Prestige of Judicial Office*

**A judge shall not abuse the prestige of judicial office to advance the personal or economic interests\* of the judge or others, or allow others to do so.**

**COMMENT**

[1] It is improper for a judge to use or attempt to use his or her position to gain personal advantage or deferential treatment of any kind. For example, it would be improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with traffic officials. Similarly, a judge must not use judicial letterhead to gain an advantage in conducting his or her personal business.

[2] A judge may provide a reference or recommendation for an individual based upon the judge's personal knowledge. The judge may use official letterhead if the judge indicates that the reference is personal and if there is no likelihood that the use of the letterhead would reasonably be perceived as an attempt to exert pressure by reason of the judicial office.

[3] Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees, and by responding to inquiries from such entities concerning the professional qualifications of a person being considered for judicial office.

[4] Special considerations arise when judges write or contribute to publications of for-profit entities, whether related or unrelated to the law. A judge should not permit anyone associated with the publication of such materials to exploit the judge's office in a manner that violates this Rule or other applicable law. In contracts for publication of a judge's writing, the judge should retain sufficient control over the advertising to avoid such exploitation.

# CANON 2

## A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY, COMPETENTLY, AND DILIGENTLY.

**RULE 2.1**
*Giving Precedence to the Duties of Judicial Office*

**The duties of judicial office, as prescribed by law,\* shall take precedence over all of a judge's personal and extrajudicial activities.**

**COMMENT**

[1] To ensure that judges are available to fulfill their judicial duties, judges must conduct their personal and extrajudicial activities to minimize the risk of conflicts that would result in frequent disqualification.  See Canon 3.

[2] Although it is not a duty of judicial office unless prescribed by law, judges are encouraged to participate in activities that promote public understanding of and confidence in the justice system.


**RULE 2.2**
*Impartiality and Fairness*

**A judge shall uphold and apply the law,\* and shall perform all duties of judicial office fairly and impartially.\***

**COMMENT**

[1] To ensure impartiality and fairness to all parties, a judge must be objective and open-minded.

[2] Although each judge comes to the bench with a unique background and personal philosophy, a judge must interpret and apply the law without regard to whether the judge approves or disapproves of the law in question.

[3] When applying and interpreting the law, a judge sometimes may make good-faith errors of fact or law.  Errors of this kind do not violate this Rule.

[4] A judge should manage the courtroom in a manner that provides all litigants the opportunity to have their matters fairly adjudicated in accordance with the law.

[5] A judge may make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard.

**RULE 2.3**
*Bias, Prejudice, and Harassment*

**(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.**

**(B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.**

**(C) A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.**

**(D) The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.**

**COMMENT**

[1] A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2] Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3] Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4] Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

10

**RULE 2.4**
*External Influences on Judicial Conduct*

**(A) A judge shall not be swayed by public clamor or fear of criticism.**

**(B) A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment.**

**(C) A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.**

**COMMENT**

[1] An independent judiciary requires that judges decide cases according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public, the media, government officials, or the judge's friends or family. Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences.

**RULE 2.5**
*Competence, Diligence, and Cooperation*

**(A) A judge shall perform judicial and administrative duties competently and diligently.**

**(B) A judge shall cooperate with other judges and court officials in the administration of court business.**

**COMMENT**

[1] Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.

[2] A judge should seek the necessary docket time, court staff, expertise, and resources to discharge all adjudicative and administrative responsibilities.

[3] Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end.

[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs. In accomplishing these critical goals in the increasing

number of cases involving self-represented litigants, a judge may take appropriate steps to facilitate a self-represented litigant's ability to be heard.

**RULE 2.6**
*Ensuring the Right to Be Heard*

**(A) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.***

**(B) A judge may encourage parties to a proceeding and their lawyers to settle matters in dispute but shall not act in a manner that coerces any party into settlement.**

**COMMENT**

[1] The right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed.

[2] The judge plays an important role in overseeing the settlement of disputes, but should be careful that efforts to further settlement do not undermine any party's right to be heard according to law. The judge should keep in mind the effect that the judge's participation in settlement discussions may have, not only on the judge's own views of the case, but also on the perceptions of the lawyers and the parties if the case remains with the judge after settlement efforts are unsuccessful. Among the factors that a judge should consider when deciding upon an appropriate settlement practice for a case are: (1) whether the parties have requested or voluntarily consented to a certain level of participation by the judge in settlement discussions, (2) whether the parties and their counsel are relatively sophisticated in legal matters, (3) whether the case will be tried by the judge or a jury, (4) whether the parties participate with their counsel in settlement discussions, (5) whether any parties are unrepresented by counsel, and (6) whether the matter is civil or criminal.

[3] Judges must be mindful of the effect settlement discussions can have, not only on their objectivity and impartiality, but also on the appearance of their objectivity and impartiality. Despite a judge's best efforts, there may be instances when information obtained during settlement discussions could influence a judge's decision making during trial, and, in such instances, the judge should consider whether disqualification may be appropriate. See Rule 2.12(A)(1).

12

**RULE 2.7**
*Responsibility to Decide*

**A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.12 or other law.***

**COMMENT**

[1] Judges must be available to decide the matters that come before the court. Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

**RULE 2.8**
*Decorum, Demeanor, and Communication with Jurors*

**(A) A judge shall require order and decorum in proceedings before the court.**

**(B) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials, and others subject to the judge's direction and control.**

**(C) A judge shall not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding.**

**COMMENT**

[1] The duty to hear all proceedings with patience and courtesy is not inconsistent with the duty imposed in Rule 2.5 to dispose promptly of the business of the court. Judges can be efficient and businesslike while being patient and deliberate.

[2] Commending or criticizing jurors for their verdict may imply a judicial expectation in future cases and may impair a juror's ability to be fair and impartial in a subsequent case.

[3] A judge who is not otherwise prohibited by law from doing so may meet with jurors who choose to remain after trial but should be careful not to discuss the merits of the case.

**RULE 2.9**
*Ex Parte Communications;* Investigations—Courts of Limited Jurisdiction**

**(A) Except as permitted in paragraph (C) of this Rule, a judge of a court of limited jurisdiction shall not investigate the substantive facts, circumstances, or merits of a pending* or impending* matter.**

**(B) Except as permitted in paragraph (D) of this Rule, a judge of a court of limited jurisdiction shall not initiate, permit, or consider ex parte communications.***

**(C) When circumstances or the interests of justice require it or when expressly authorized by law,* a judge of a court of limited jurisdiction may examine the criminal record, driving record, and on-line court records repository pertaining to a defendant in a pending or impending matter which is on file within an agency of the state of Montana for the purpose of determining whether the charge is lawful or for purposes of setting bail or sentencing. A judge may not amend the charge except on motion of the prosecutor and as otherwise provided by law.**

**(D) When circumstances or the interests of justice require it or when expressly authorized by law, a judge of a court of limited jurisdiction may:**

**(1) engage in ex parte communications involving administrative, ministerial or scheduling matters provided:**

**(a) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication; and**

**(b) the judge notifies all other parties, if necessary to prevent any party from gaining a procedural or tactical advantage.**

**(2) consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, with other judges or with peace officers, prosecutors, and defense counsel provided:**

**(a) that the judge avoids receiving factual information that is not a part of the record or part of the defendant's criminal or driving record; and**

**(b) that the judge does not abrogate his or her responsibility to personally adjudicate the matter fairly and impartially.***

**(3) receive ex parte communications in proceedings in open court if the prosecutor is not present, provided:**

**(a) that the prosecutor has not otherwise informed the judge in writing of his or her desire or willingness to appear; and**

14

**(b) that the judge shall not try a case to the court or to a jury without the presence of a prosecutor.**

**(4) verify whether a party has a valid driver's license and mandatory automobile insurance and whether a party is complying with any restitution requirement or conditions imposed in a sentence.**

**(5) receive ex parte communications in proceedings involving temporary orders of protection provided that the respondent has been given notice and an opportunity to appear to the extent required by law.**

**(6) Except as set forth in subparagraphs (1) through (5), if a judge receives an ex parte communication or other information having a potentially significant bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the content of the communication or information and provide the parties with an opportunity to respond. If such communication or information is in writing, a copy of it shall be made available to the parties and retained.**

**(E) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.**

## COMMENT

[1] This Rule is tailored to accommodate the unique circumstances in which Montana's courts of limited jurisdiction operate. This Rule acknowledges that these courts exist in both large metropolitan and isolated rural locations; that the judges of these courts may or may not have clerks or other staff; that prosecutors may or may not be able to be present at all proceedings of the court; that it is necessary for these judges to sometimes speak directly with a party, peace officer, administrative personnel, or insurance agent to verify or clarify administrative or ministerial facts; and that such courts must administer large case loads consisting primarily of misdemeanor criminal and traffic offenses and civil matters involving amounts limited by law.

[2] This Rule provides some flexibility to the judges of courts of limited jurisdiction in dealing with procedural, administrative, and ministerial matters, while retaining requirements that the judge may not independently investigate the substantive facts or merits of any pending or impending matter; that notice and opportunity to be heard be provided if the judge receives or obtains information which may have a significant bearing upon an pending or impending matter; and that the judge personally adjudicate the matter at issue impartially and fairly. While the judge may use discretion and common sense, those must be exercised in accordance with the law and keeping in mind constitutional rights of the parties. Nothing in this Rule abrogates the judge's obligation to comply with all applicable laws, court rules, or administrative regulations.

[3] The prohibition against a judge independently investigating the substantive facts or merits of any matter that is or may come before the court extends to information available in all mediums, including electronic.

[4] Judges are admonished that they are members of a distinct branch of government—the judiciary; that they are always to perform their duties as neutral and detached magistrates; and that they do not function as arms of local government, law enforcement, or as members of either the prosecution or defense "team."  Judges do not and may not "represent" either party.

[5] This Code also controls the conduct of a judge if and when the judge functions as the court clerk or administrator.


**RULE 2.10**
*Ex Parte Communications\*—All Courts Except for Courts of Limited Jurisdiction\**

**(A) A judge shall not initiate, permit, or consider ex parte communications, except as follows:**

> **(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:**
>
> > **(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and**
> >
> > **(b) the judge makes provision promptly to notify all other parties of the content of the ex parte communication, and gives the parties an opportunity to respond.**
>
> **(2) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge avoids receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.**
>
> **(3) A judge may initiate, permit, or consider any ex parte communication when expressly authorized by law\* to do so, or when serving on therapeutic or problem-solving courts, mental health courts, drug courts, or the water court.  In this capacity, judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others.**

**(B) If a judge receives an ex parte communication having a potentially significant bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the content of the communication and provide the parties with an opportunity to respond.  If such communication is in writing, a copy of it shall be made available to the parties and retained.**

**(C) A judge shall not investigate matters independently.\***

16

**(D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.**

**COMMENT**

[1] Whenever notice to a party is required by this Rule, it is the party's lawyer, or if the party is unrepresented, the party to whom notice is to be given.

[2] The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this Rule.

[3] A judge may initiate, permit, or consider ex parte communications expressly authorized by law, such as when serving on therapeutic or problem-solving courts, mental health courts, drug courts, or the water court. In this capacity, judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others.

[4] A judge must avoid ex parte discussions of a case with judges who have previously been substituted or disqualified from hearing the matter, and with judges who have trial or appellate jurisdiction over the matter.

[5] The prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic. The prohibition does not apply to a judge's effort to obtain general information about a specialized area of knowledge that does not include the application of such information in a specific case. Nor does the prohibition apply to interstate or state-federal communications among judges on the general topic of case management decisions in mass torts or other complex cases, such as discovery schedules, standard interrogatories, shared discovery depositories, appointment of liaison counsel, committee membership, or common fund structures.

[6] Consultations with ethics advisory committees, outside counsel, or legal experts concerning the judge's compliance with this Code are permitted.

[7] It is acknowledged that judges frequently receive unsolicited ex parte communications. Judges should apply their discretion and common sense when called upon to determine whether any such communication qualifies as one having a potentially significant bearing upon the substance of a matter, for purposes of paragraph (B).

**RULE 2.11**
*Judicial Statements on Pending and Impending Cases*

**(A) A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending\* or impending\* in any court,**

or make any nonpublic statement that might substantially interfere with a fair trial or hearing.

**(B) A judge shall not, in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial\* performance of the adjudicative duties of judicial office.**

**(C) A judge shall require court staff, court officials, and others subject to the judge's direction and control to refrain from making statements that the judge would be prohibited from making by paragraphs (A) and (B).**

**(D) Notwithstanding the restrictions in paragraph (A), a judge may make public statements in the course of official duties, may explain court procedures, and may comment on any proceeding in which the judge is a litigant in a personal capacity.**

**(E) Subject to the requirements of paragraph (A), a judge may respond directly or through a third party to allegations in the media or elsewhere concerning the judge's conduct in a matter.**

**COMMENT**

[1] This Rule's restrictions on judicial speech are essential to the maintenance of the independence, integrity, and impartiality of the judiciary.

[2] This Rule does not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity. In cases in which the judge is a litigant in an official capacity, such as a writ of mandamus, the judge must not comment publicly.

[3] Depending upon the circumstances, the judge should consider whether it may be preferable for a third party, rather than the judge, to respond or issue statements in connection with allegations concerning the judge's conduct in a matter.

**RULE 2.12**
*Disqualification*

**(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality\* might reasonably be questioned, including but not limited to the following circumstances:**

> **(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge\* of facts that are in dispute in the proceeding.**

> **(2) The judge knows\* that the judge, the judge's spouse or domestic partner,\* or a person within the third degree of relationship\* to either of them, or the spouse or domestic partner of such a person is:**

18

**(a)** a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;

**(b)** acting as a lawyer in the proceeding;

**(c)** a person who has more than a de minimis* interest that could be substantially affected by the proceeding; or

**(d)** likely to be a material witness in the proceeding.

**(3)** The judge knows that he or she, individually or as a fiduciary,* or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household,* has an economic interest* in the subject matter in controversy or in a party to the proceeding.

**(4)** The judge, while a judge or a judicial candidate,* has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

**(5)** The judge:

**(a)** served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association;

**(b)** served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy;

**(c)** was a material witness concerning the matter; or

**(d)** previously presided as a judge over the matter in another court.

**(B)** A judge shall keep informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse or domestic partner and minor children residing in the judge's household.

**(C)** A judge subject to disqualification under this Rule, other than for bias or prejudice under paragraph (A)(1), may disclose in writing or on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and lawyers agree, without participation by the judge or court

**personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.**

**COMMENT**

[1] Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (5) apply.

[2] A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.

[3] The rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In matters that require immediate action, the judge must disclose on the record the basis for possible disqualification and make reasonable efforts to transfer the matter to another judge as soon as practicable.

[4] The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not itself disqualify the judge. If, however, the judge's impartiality might reasonably be questioned under paragraph (A), or the relative is known by the judge to have an interest in the law firm that could be substantially affected by the proceeding under paragraph (A)(2)(c), the judge's disqualification is required.

[5] A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.

[6] "Economic interest," as set forth in the Terminology paragraph, means ownership of more than a de minimis legal or equitable interest. Except for situations in which a judge participates in the management of such a legal or equitable interest, or the interest could be substantially affected by the outcome of a proceeding before a judge, it does not include:

    (a) an interest in the individual holdings within a mutual or common investment fund;

    (b) an interest in securities held by an educational, religious, charitable, fraternal, or civic organization in which the judge or the judge's spouse, domestic partner, parent, or child serves as a director, officer, advisor, or other participant;

    (c) a deposit in a financial institution or deposits or proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests; or

    (d) an interest in the issuer of government securities held by the judge.

**RULE 2.13**
*Supervisory Duties*

**(A) A judge shall require court staff, court officials, and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under this Code.**

**(B) A judge with supervisory authority for the performance of other judges shall take reasonable measures to ensure that those judges properly discharge their judicial responsibilities, including the prompt disposition of matters before them.**

**COMMENT**

[1] A judge is responsible for his or her own conduct and for the conduct of others, such as staff, when those persons are acting at the judge's direction or control. A judge may not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when such conduct would violate the Code if undertaken by the judge.

[2] Public confidence in the judicial system depends upon timely justice. To promote the efficient administration of justice, a judge with supervisory authority must take the steps needed to ensure that judges under his or her supervision administer their workloads promptly.

**RULE 2.14**
*Administrative Appointments*

**(A) In making administrative appointments, a judge:**

> **(1) shall exercise the power of appointment impartially\* and on the basis of merit; and**

> **(2) shall avoid nepotism, favoritism, and unnecessary appointments.**

**(B) A judge shall not approve compensation of appointees beyond the fair value of services rendered.**

**COMMENT**

[1] Appointees of a judge include assigned counsel, officials such as referees, commissioners, special masters, receivers, and guardians, and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by paragraph (A).

[2] Unless otherwise defined by law, nepotism is the appointment or hiring of any relative within the third degree of relationship of either the judge or the judge's spouse or domestic partner, or the spouse or domestic partner of such relative.

**RULE 2.15**
*Disability and Impairment*

**A judge having a reasonable belief that the performance of a lawyer or another judge is impaired by drugs or alcohol, or by a mental, emotional, or physical condition, shall take appropriate action, which may include a confidential referral to a lawyer or judicial assistance program.**

**COMMENT**

[1] "Appropriate action" means action intended and reasonably likely to help the judge or lawyer in question address the problem and prevent harm to the justice system. Depending upon the circumstances, appropriate action may include, but is not limited to, speaking directly to the impaired person, notifying an individual with supervisory responsibility over the impaired person, or making a referral to an assistance program.

[2] Taking or initiating corrective action by way of referral to an assistance program may satisfy a judge's responsibility under this Rule. Assistance programs have many approaches for offering help to impaired judges and lawyers, such as intervention, counseling, or referral to appropriate health care professionals. Depending upon the gravity of the conduct that has come to the judge's attention, however, the judge may be required to take other action, such as reporting the impaired judge or lawyer to the appropriate authority, agency, or body. See Rule 2.16.

**RULE 2.16**
*Responding to Judicial and Lawyer Misconduct*

**(A) A judge having knowledge\* that another judge has committed a violation of this Code that raises a substantial question regarding the judge's honesty, trustworthiness, or fitness as a judge in other respects shall inform the appropriate authority.\***

**(B) A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority.**

**(C) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code shall take appropriate action.**

**(D) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action.**

**COMMENT**

[1] Taking action to address known misconduct is a judge's obligation. Paragraphs (A) and (B) impose an obligation on the judge to report to the appropriate disciplinary authority the known misconduct of another judge or a lawyer that raises a substantial question regarding the honesty, trustworthiness, or fitness of that judge or lawyer. Ignoring or denying known misconduct among one's judicial colleagues or members of the legal profession undermines a judge's responsibility to participate in efforts to ensure public respect for the justice system. This Rule limits the reporting obligation to those offenses that an independent judiciary must vigorously endeavor to prevent.

[2] A judge who does not have actual knowledge that another judge or a lawyer may have committed misconduct, but receives information indicating a substantial likelihood of such misconduct, is required to take appropriate action under paragraphs (C) and (D). Appropriate action may include, but is not limited to, communicating directly with the judge who may have violated this Code, communicating with a supervising judge, or reporting the suspected violation to the appropriate authority or other agency or body. Similarly, actions to be taken in response to information indicating that a lawyer has committed a violation of the Rules of Professional Conduct may include, but are not limited to, communicating directly with the lawyer who may have committed the violation, or reporting the suspected violation to the appropriate authority or other agency or body.

**RULE 2.17**
*Cooperation with Disciplinary Authorities*

**(A) A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.**

**(B) A judge shall not retaliate, directly or indirectly, against a person known\* or suspected to have assisted or cooperated with an investigation of a judge or a lawyer.**

**COMMENT**

[1] Cooperation with investigations and proceedings of judicial and lawyer discipline agencies, as required in paragraph (A), instills confidence in judges' commitment to the integrity of the judicial system and the protection of the public.

# CANON 3

**A JUDGE SHALL CONDUCT THE JUDGE'S PERSONAL AND EXTRAJUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH THE OBLIGATIONS OF JUDICIAL OFFICE.**

**RULE 3.1**
*Extrajudicial Activities in General*

**A judge may engage in extrajudicial activities, except as prohibited by law\* or this Code. However, when engaging in extrajudicial activities, a judge shall not:**

**(A) participate in activities that will interfere with the proper performance of the judge's judicial duties;**

**(B) participate in activities that will lead to frequent disqualification of the judge;**

**(C) participate in activities that would appear to a reasonable person to undermine the judge's independence,\* integrity,\* or impartiality;\***

**(D) engage in conduct that would appear to a reasonable person to be coercive; or**

**(E) make use of court premises, staff, stationery, equipment, or other resources, except for incidental use for activities that concern the law, the legal system, or the administration of justice, or unless such additional use is permitted by law.**

**COMMENT**

[1] To the extent that time permits, and judicial independence and impartiality are not compromised, judges are encouraged to engage in appropriate extrajudicial activities. Judges are uniquely qualified to engage in extrajudicial activities that concern the law, the legal system, and the administration of justice, such as by speaking, writing, teaching, or participating in scholarly research projects. In addition, judges are permitted and encouraged to engage in educational, religious, charitable, fraternal, or civic extrajudicial activities not conducted for profit, even when the activities do not involve the law. See Rule 3.7.

[2] Participation in both law-related and other extrajudicial activities helps integrate judges into their communities, and furthers public understanding of and respect for courts and the judicial system.

[3] Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's

extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

[4] While engaged in permitted extrajudicial activities, judges must not coerce others or take action that would reasonably be perceived as coercive. For example, depending upon the circumstances, a judge's solicitation of contributions or memberships for an organization, even as permitted by Rule 3.7(A), might create the risk that the person solicited would feel obligated to respond favorably, or would do so to curry favor with the judge.

**RULE 3.2**
*Appearances before Governmental Bodies and Consultation with Government Officials*

**A judge shall not appear voluntarily at a public hearing before, or otherwise consult with, an executive or a legislative body or official, except:**

**(A) in connection with matters concerning the law,\* the legal system, or the administration of justice;**

**(B) in connection with matters about which the judge acquired knowledge\* or expertise in the course of the judge's judicial duties; or**

**(C) when the judge is self-representing in a matter involving the judge's legal or economic interests,\* or when the judge is acting in a fiduciary\* capacity.**

**COMMENT**

[1] Judges possess special expertise in matters of law, the legal system, and the administration of justice, and may properly share that expertise with governmental bodies and executive or legislative branch officials.

[2] In appearing before governmental bodies or consulting with government officials, judges must be mindful that they remain subject to other provisions of this Code, such as Rule 1.3, prohibiting judges from using the prestige of office to advance their own or others' interests, Rule 2.11, governing public comment on pending and impending matters, and Rule 3.1(C), prohibiting judges from engaging in extrajudicial activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality.

[3] In general, it would be an unnecessary and unfair burden to prohibit judges from appearing before governmental bodies or consulting with government officials on matters that are likely to affect them as private citizens, such as zoning proposals affecting their real property. In engaging in such activities, however, judges must not refer to their judicial positions, and must otherwise exercise caution to avoid using the prestige of judicial office.

## RULE 3.3
*Testifying as a Character Witness*

**A judge shall not testify as a character witness in a judicial, administrative, or other adjudicatory proceeding or otherwise vouch for the character of a person in a legal proceeding, except when duly summoned.**

### COMMENT

[1] A judge who, without being subpoenaed, testifies as a character witness abuses the prestige of judicial office to advance the interests of another. See Rule 1.3. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

## RULE 3.4
*Appointments to Governmental Positions*

**A judge shall not accept appointment to a governmental committee, board, commission, or other governmental position, unless it is one that concerns the law,\* the legal system, or the administration of justice.**

### COMMENT

[1] Rule 3.4 implicitly acknowledges the value of judges accepting appointments to entities that concern the law, the legal system, or the administration of justice. Even in such instances, however, a judge should assess the appropriateness of accepting an appointment, paying particular attention to the subject matter of the appointment and the availability and allocation of judicial resources, including the judge's time commitments, and giving due regard to the requirements of the independence and impartiality of the judiciary.

[2] A judge may represent his or her country, state, or locality on ceremonial occasions or in connection with historical, educational, or cultural activities. Such representation does not constitute acceptance of a government position.

## RULE 3.5
*Use of Nonpublic Information*

**A judge shall not intentionally disclose or use nonpublic information\* known\* or acquired in a judicial capacity for any purpose in contravention of or unrelated to the judge's judicial duties.**

### COMMENT

[1] A judge is, by definition, uniquely privy to the inclination of the court to resolve a matter or issue pending before it in a particular manner. A judge shall not, under any circumstances,

disclose such information to a third party in advance of the court's release of its decision. With respect to the parties in the case, a judge shall not disclose such information to a party or counsel unless the court simultaneously shares such information openly with all parties to the proceeding.

[2] In the course of performing judicial duties, a judge may acquire information of commercial or other value that is unavailable to the public. The judge must not reveal or use such information for personal gain or for any purpose unrelated to his or her judicial duties.

[3] This rule is not intended, however, to affect a judge's ability to act on information as necessary to protect the health or safety of the judge or a member of a judge's family, court personnel, or other judicial officers if consistent with other provisions of this Code.

**RULE 3.6**
*Affiliation with Discriminatory Organizations*

**(A) A judge shall not hold membership in any organization that practices invidious discrimination on the basis of race, sex, gender, religion, national origin, ethnicity, or sexual orientation.**

**(B) A judge shall not use the benefits or facilities of an organization if the judge knows\* or should know that the organization practices invidious discrimination on one or more of the bases identified in paragraph (A). A judge's attendance at an event in a facility of an organization that the judge is not permitted to join is not a violation of this Rule when the judge's attendance is an isolated event that could not reasonably be perceived as an endorsement of the organization's practices.**

**(C) A judge's membership in a religious organization as a lawful exercise of the freedom of religion is not a violation of this Rule. This Rule does not apply to national or state military service.**

**COMMENT**

[1] A judge's public manifestation of approval of invidious discrimination on any basis gives rise to the appearance of impropriety and diminishes public confidence in the integrity and impartiality of the judiciary. A judge's membership in an organization that practices invidious discrimination creates the perception that the judge's impartiality is impaired.

[2] An organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, sex, gender, religion, national origin, ethnicity, or sexual orientation persons who would otherwise be eligible for admission. Whether an organization practices invidious discrimination is a complex question to which judges should be attentive. The answer cannot be determined from a mere examination of an organization's current membership rolls, but rather, depends upon how the organization selects members, as well as other relevant factors, such as whether the organization is dedicated to the preservation of religious, ethnic, or cultural values of legitimate common interest to its members, or whether it is

27

an intimate, purely private organization whose membership limitations could not constitutionally be prohibited.

[3] When a judge learns that an organization to which the judge belongs engages in invidious discrimination, the judge must resign immediately from the organization.

**RULE 3.7**
*Participation in Educational, Religious, Charitable, Fraternal, or Civic Organizations and Activities*

**(A) Subject to the requirements of Rule 3.1, a judge may participate in activities sponsored by organizations or governmental entities concerned with the law,\* the legal system, or the administration of justice, and those sponsored by or on behalf of educational, religious, charitable, fraternal, or civic organizations not conducted for profit, including but not limited to the following activities:**

**(1) assisting such an organization or entity in planning related to fund-raising, and participating in the management and investment of the organization's or entity's funds;**

**(2) soliciting\* contributions\* for such an organization or entity, but only from members of the judge's family,\* or from judges over whom the judge does not exercise supervisory or appellate authority;**

**(3) appearing or speaking at, receiving an award or other recognition at, being featured on the program of, and permitting his or her title to be used in connection with a non-fund-raising event of such an organization or entity;**

**(4) serving as an officer, director, trustee, or nonlegal advisor of such an organization or entity, unless it is likely that the organization or entity:**

**(a) will be engaged in proceedings that would ordinarily come before the judge; or**

**(b) will frequently be engaged in adversary proceedings in the court of which the judge is a member, or in any court subject to the appellate jurisdiction of the court of which the judge is a member.**

**(5) soliciting membership for such an organization or entity, even though the membership dues or fees generated may be used to support the objectives of the organization or entity, but only if the organization or entity is concerned with the law, the legal system, or the administration of justice;**

**(6) making recommendations to such a public or private fund-granting organization or entity in connection with its programs and activities, but only**

**if the organization or entity is concerned with the law, the legal system, or the administration of justice; and**

**(7) appearing or speaking at, receiving an award or other recognition at, being featured on the program of, and permitting her or his title to be used in connection with a fund-raising event of an organization which concerns the law, the legal system, or the administration of justice.**

**(B) A judge may encourage lawyers to provide pro bono publico legal services.**

## COMMENT

[1] The activities permitted by paragraph (A) generally include those sponsored by or undertaken on behalf of public or private not-for-profit educational institutions, and other not-for-profit organizations, including law-related, charitable, and other organizations. The activities permitted by paragraph (A) do not include those sponsored by or on behalf of organizations which have as a primary purpose advocating in political processes for or against change in the laws related to limited subject areas. Activities relating to such political advocacy organizations are subject to the requirements of Rule 3.1, as well as Canon 4 and the Rules thereunder.

[2] Even for law-related organizations, a judge should consider whether the membership and purposes of the organization, or the nature of the judge's participation in or association with the organization, would conflict with the judge's obligation to refrain from activities that reflect adversely upon a judge's independence, integrity, and impartiality.

[3] Mere attendance at an event, whether or not the event serves a fund-raising purpose, does not constitute a violation of paragraph (A). It is also generally permissible for a judge to serve as an usher or a food server or preparer, or to perform similar functions, at fund-raising events sponsored by educational, religious, charitable, fraternal, or civic organizations. Such activities are not solicitation and do not present an element of coercion or abuse the prestige of judicial office.

[4] Identification of a judge's position in educational, religious, charitable, fraternal, or civic organizations on letterhead used for fund-raising or membership solicitation does not violate this Rule if comparable designations are used for other persons.

[5] In addition to appointing lawyers to serve as counsel for indigent parties in individual cases, a judge may promote broader access to justice by encouraging lawyers to participate in pro bono publico legal services, if in doing so the judge does not employ coercion, or abuse the prestige of judicial office.

[6] Subject to the requirements of Rule 3.1 and paragraph (A), a judge may provide leadership in improving equal access to the justice system; developing public education programs; engaging in outreach activities to promote the fair administration of justice; and convening and participating in advisory committees and community collaborations devoted to the improvement of the law, the legal system, the provision of legal services, and/or the administration of justice.

**RULE 3.8**
*Appointments to Fiduciary Positions*

**(A) A judge shall not accept appointment to serve in a fiduciary\* position, such as executor, administrator, trustee, guardian, attorney in fact, or other personal representative, except for the estate, trust, or person of a member of the judge's family,\* and then only if such service will not interfere with the proper performance of judicial duties.**

**(B) A judge shall not serve in a fiduciary position if the judge as fiduciary will likely be engaged in proceedings that would ordinarily come before the judge, or if the estate, trust, or ward becomes involved in adversary proceedings in the court on which the judge serves, or one under its appellate jurisdiction.**

**(C) A judge acting in a fiduciary capacity shall be subject to the same restrictions on engaging in financial activities that apply to a judge personally.**

**(D) If a person who is serving in a fiduciary position becomes a judge, he or she must comply with this Rule as soon as reasonably practicable, but in no event later than one year after becoming a judge.**

**COMMENT**

[1] A judge should recognize that other restrictions imposed by this Code may conflict with a judge's obligations as a fiduciary; in such circumstances, a judge should resign as fiduciary. For example, serving as a fiduciary might require frequent disqualification of a judge under Rule 2.12 because a judge is deemed to have an economic interest in shares of stock held by a trust if the amount of stock held is more than de minimis. This Rule does not prohibit a judge from assuming guardianship of a minor child, as authorized by law.

**RULE 3.9**
*Service as Arbitrator or Mediator*

**A judge shall not act as an arbitrator or a mediator or perform other judicial functions apart from the judge's official duties unless expressly authorized by law.\***

**COMMENT**

[1] A "judge's official duties" may include acting as a mediator in a case pending before another judge.

**RULE 3.10**
*Practice of Law*

**(A) A judge authorized by law to engage in the practice of law\* must scrupulously avoid conduct in the practice of law which may create a conflict with judicial duties or create the appearance of impropriety.\*  If a conflict arises between the judge's obligations as judge and the private practice of law, the judge shall resolve the conflict in such a way that accomplishes the fulfillment of judicial duties.**

**(B) A judge may self-represent and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family,\* but is prohibited from serving as the family member's lawyer in any forum.**

**COMMENT**

[1] A judge may self-represent in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with governmental bodies.  A judge must not use the prestige of office to advance the judge's personal or family interests.  See Rule 1.3.

**RULE 3.11**
*Financial, Business, or Remunerative Activities*

**(A) A judge may hold and manage investments of the judge and members of the judge's family.\***

**(B) A judge shall not serve as an officer, director, manager, general partner, advisor, or employee of any business entity except that a judge may manage or participate in:**

> **(1) a business closely held by the judge or members of the judge's family; or**

> **(2) a business entity primarily engaged in investment of the financial resources of the judge or members of the judge's family.**

**(C) A judge shall not engage in financial activities permitted under paragraphs (A) and (B) if they will:**

> **(1) interfere with the proper performance of judicial duties;**

> **(2) lead to frequent disqualification of the judge;**

> **(3) involve the judge in frequent transactions or continuing business relationships with lawyers or other persons likely to come before the court on which the judge serves; or**

> **(4) result in violation of other provisions of this Code.**

**COMMENT**

[1] Judges are generally permitted to engage in financial activities, including managing real estate and other investments for themselves or for members of their families. Participation in these activities, like participation in other extrajudicial activities, is subject to the requirements of this Code. For example, it would be improper for a judge to spend so much time on business activities that it interferes with the performance of judicial duties. See Rule 2.1. Similarly, it would be improper for a judge to use his or her official title or appear in judicial robes in business advertising, or to conduct his or her business or financial affairs in such a way that disqualification is frequently required. See Rules 1.3 and 2.12.

[2] As soon as practicable without serious financial detriment, the judge must divest himself or herself of investments and other financial interests that might require frequent disqualification or otherwise violate this Rule.

**RULE 3.12**
*Compensation for Extrajudicial Activities*

**A judge may accept reasonable compensation for extrajudicial activities permitted by this Code or other law\* unless such acceptance would appear to a reasonable person to undermine the judge's independence,\* integrity,\* or impartiality.\***

**RULE 3.13**
*Acceptance and Reporting of Gifts, Loans, Bequests, Benefits, or Other Things of Value*

**(A) A judge shall not accept any gifts, loans, bequests, benefits, or other things of value, if acceptance is prohibited by law\* or would appear to a reasonable person to undermine the judge's independence,\* integrity,\* or impartiality.\***

**(B) Unless otherwise prohibited by law, or by paragraph (A), a judge may accept the following:**

> **(1) items with little intrinsic value, such as plaques, certificates, trophies, and greeting cards;**

> **(2) gifts, loans, bequests, benefits, or other things of value from friends, relatives, or other persons, including lawyers, whose appearance or interest in a proceeding pending\* or impending\* before the judge would in any event require disqualification of the judge under Rule 2.12;**

> **(3) ordinary social hospitality;**

**(4) commercial or financial opportunities and benefits, including special pricing and discounts, and loans from lending institutions in their regular course of business, if the same opportunities and benefits or loans are made available on the same terms to similarly situated persons who are not judges;**

**(5) rewards and prizes given to competitors or participants in random drawings, contests, or other events that are open to persons who are not judges;**

**(6) scholarships, fellowships, and similar benefits or awards:**

> **(a) related to training in the law, the legal system or the administration of justice; or**

> **(b) available to similarly situated persons who are not judges, based on the same terms and criteria;**

**(7) books, magazines, journals, audiovisual materials, and other resource materials supplied by publishers on a complimentary basis for official use;**

**(8) gifts, awards, or benefits associated with the business, profession, or other separate activity of a spouse, a domestic partner,\* or other family member of a judge residing in the judge's household,\* but that incidentally benefit the judge;**

**(9) gifts incident to a public testimonial; and**

**(10) invitations to the judge and the judge's spouse, domestic partner, or guest to attend without charge:**

> **(a) an event associated with a bar-related function or other activity relating to the law, the legal system, or the administration of justice; or**

> **(b) an event associated with any of the judge's educational, religious, charitable, fraternal, or civic activities permitted by this Code, if the same invitation is offered to nonjudges who are engaged in similar ways in the activity as is the judge.**

## COMMENT

[1] Whenever a judge accepts a gift or other thing of value without paying fair market value, there is a risk that the benefit might be viewed as intended to influence the judge's decision in a case. Gift-giving between friends and relatives is a common occurrence, and ordinarily does not create an appearance of impropriety or cause reasonable persons to believe that the judge's independence, integrity, or impartiality has been compromised. In addition, when the appearance of friends or relatives in a case would require the judge's disqualification under Rule 2.12, there would be no opportunity for a gift to influence the judge's decision making.

[2] Businesses and financial institutions frequently make available special pricing, discounts, and other benefits, either in connection with a temporary promotion or for preferred customers, based upon longevity of the relationship, volume of business transacted, and other factors. A judge may freely accept such benefits if they are available to the general public, or if the judge qualifies for the special price or discount according to the same criteria as are applied to persons who are not judges. As an example, loans provided at generally prevailing interest rates are not gifts, but a judge could not accept a loan from a financial institution at below-market interest rates unless the same rate was being made available to the general public for a certain period of time or only to borrowers with specified qualifications that the judge also possesses.

[3] Rule 3.13 applies only to acceptance of gifts or other things of value by a judge. Nonetheless, if a gift or other benefit is given to the judge's spouse, domestic partner, or member of the judge's family residing in the judge's household, it may be viewed as an attempt to evade Rule 3.13 and influence the judge indirectly. Where the gift or benefit is being made primarily to such other persons, and the judge is merely an incidental beneficiary, this concern is reduced. A judge should, however, remind family and household members of the restrictions imposed upon judges, and urge them to take these restrictions into account when making decisions about accepting such gifts or benefits.

[4] Rule 3.13 does not apply to contributions to a judge's campaign for judicial office. Such contributions are governed by other Rules of this Code.

**RULE 3.14**
*Reimbursement of Expenses and Waivers of Fees or Charges*

**(A) Unless otherwise prohibited by Rules 3.1 and 3.13(A) or other law,\* a judge may accept reimbursement of necessary and reasonable expenses for travel, food, lodging, or other incidental expenses, or a waiver or partial waiver of fees or charges for registration, tuition, and similar items, from sources other than the judge's employing entity, if the expenses or charges are associated with the judge's participation in extrajudicial activities permitted by this Code.**

**(B) Reimbursement of expenses for necessary travel, food, lodging, or other incidental expenses shall be limited to the actual costs reasonably incurred by the judge and, when appropriate to the occasion, by the judge's spouse, domestic partner,\* or guest.**

**COMMENT**

[1] Educational, civic, religious, fraternal, and charitable organizations often sponsor meetings, seminars, symposia, dinners, awards ceremonies, and similar events. Judges are encouraged to attend educational programs, as both teachers and participants, in law-related and academic disciplines, in furtherance of their duty to remain competent in the law. Participation in a variety of other extrajudicial activity is also permitted and encouraged by this Code.

[2] Not infrequently, sponsoring organizations invite certain judges to attend seminars or other events on a fee-waived or partial-fee-waived basis, and sometimes include reimbursement for necessary travel, food, lodging, or other incidental expenses. A judge's decision whether to accept reimbursement of expenses or a waiver or partial waiver of fees or charges in connection with these or other extrajudicial activities must be based upon an assessment of all the circumstances. The judge must undertake a reasonable inquiry to obtain the information necessary to make an informed judgment about whether acceptance would be consistent with the requirements of this Code.

[3] A judge must assure himself or herself that acceptance of reimbursement or fee waivers would not appear to a reasonable person to undermine the judge's independence, integrity, or impartiality. The factors that a judge should consider when deciding whether to accept reimbursement or a fee waiver for attendance at a particular activity include:

(a) whether the sponsor is an accredited educational institution or bar association rather than a trade association or a for-profit entity;

(b) whether the funding comes largely from numerous contributors rather than from a single entity and is earmarked for programs with specific content;

(c) whether the content is related or unrelated to the subject matter of litigation pending or impending before the judge, or to matters that are likely to come before the judge;

(d) whether the activity is primarily educational rather than recreational, and whether the costs of the event are reasonable and comparable to those associated with similar events sponsored by the judiciary, bar associations, or similar groups;

(e) whether information concerning the activity and its funding sources is available upon inquiry;

(f) whether the sponsor or source of funding is generally associated with particular parties or interests currently appearing or likely to appear in the judge's court, thus possibly requiring disqualification of the judge under Rule 2.12;

(g) whether differing viewpoints are presented; and

(h) whether a broad range of judicial and nonjudicial participants are invited, whether a large number of participants are invited, and whether the program is designed specifically for judges.

# CANON 4

**A JUDGE OR CANDIDATE FOR JUDICIAL OFFICE SHALL NOT ENGAGE IN POLITICAL OR CAMPAIGN ACTIVITY THAT IS INCONSISTENT WITH THE INDEPENDENCE, INTEGRITY, OR IMPARTIALITY OF THE JUDICIARY.**

**RULE 4.1**
*Political and Campaign Activities of Judges and Judicial Candidates in General*

**(A) Except as permitted by law,\* or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate\* shall not:**

> **(1) act as a leader in, or hold an office in, a political organization;\***
>
> **(2) make speeches on behalf of a political organization, or any partisan\* or independent\* non-judicial office-holder or candidate for public office;**
>
> **(3) publicly endorse or oppose a partisan or independent candidate for any non-judicial public office;**
>
> **(4) solicit funds for, pay an assessment to, or make a contribution\* to a political organization, or to or on behalf of any partisan or independent office-holder or candidate for public office;**
>
> **(5) attend or purchase tickets for dinners or other events sponsored by a partisan or independent candidate for non-judicial public office;**
>
> **(6) publicly identify himself or herself as a candidate of a political organization;**
>
> **(7) seek, accept, or use endorsements from a political organization, or partisan or independent non-judicial office-holder or candidate;**
>
> **(8) use or permit the use of campaign contributions for the private benefit of the judge, the candidate, or others;**
>
> **(9) use court staff, facilities, or other court resources in a campaign for judicial office;**
>
> **(10) knowingly,\* or with reckless disregard for the truth, make any false or misleading statement;**
>
> **(11) make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending\* or impending\* in any court; or**
>
> **(12) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial\* performance of the adjudicative duties of judicial office.**

**(B) A judge or judicial candidate shall take reasonable measures to ensure that other persons do not undertake, on behalf of the judge or judicial candidate, any activities prohibited under paragraph (A).**

**COMMENT**

*General Considerations*

[1] Even when subject to public election, a judge plays a role different from that of a legislator or executive branch official. Rather than making decisions based upon the expressed views or preferences of the electorate, a judge makes decisions based upon the law and the facts of every case. Therefore, in furtherance of this interest, judges and judicial candidates must, to the greatest extent possible, be free and appear to be free from political influence and political pressure. This Canon imposes narrowly tailored restrictions upon the political and campaign activities of all judges and judicial candidates, taking into account the various methods of selecting judges.

[2] When a person becomes a judicial candidate, this Canon becomes applicable to his or her conduct. If a judicial candidate who is not a judge violates this Canon and is elected, he or she may be referred to the Judicial Standards Commission for discipline on assuming office.

*Participation in Political Activities*

[3] Public confidence in the independence and impartiality of the judiciary is eroded if judges or judicial candidates are perceived to be subject to political influence. Judges and judicial candidates are prohibited by paragraph (A)(1) from assuming leadership roles in political organizations.

[4] Paragraphs (A)(2) and (A)(3) prohibit judges and judicial candidates from making speeches on behalf of political organizations or publicly endorsing or opposing partisan candidates for public office, respectively, to prevent them from abusing the prestige of judicial office to advance the interests of others. See Rule 1.3. These Rules do not prohibit candidates from campaigning on their own behalf, or from endorsing or opposing candidates for a judicial office, because judges are in the unique position to know and share with interested persons the qualifications of judicial candidates. See Rule 4.2(B)(2) and (3). However, note that while it is acceptable for candidates for judicial office to seek and accept endorsements from another judge, and have the supportive judge attend the candidate's dinners, judges are prohibited from soliciting or collecting money on their behalf.

[5] Although members of the families of judges and judicial candidates are free to engage in their own political activity, including running for public office, there is no "family exception" to the prohibition in paragraph (A)(3) against a judge or candidate publicly endorsing candidates for public office. A judge or judicial candidate must not become involved in, or publicly associated with, a family member's political activity or campaign for public office. To avoid public misunderstanding, judges and judicial candidates should take, and should urge members of their families to take, reasonable steps to avoid any implication that they endorse any family member's candidacy or other political activity.

[6] Judges and judicial candidates retain the right to participate in the political process as voters in both primary and general elections.

*Statements and Comments Made During a Campaign for Judicial Office*

[7] Judicial candidates must be scrupulously fair and accurate in all statements made by them and by their campaign committees. Paragraph (A)(10) obligates candidates and their committees to refrain from making statements that are false or misleading, or that omit facts necessary to make the communication considered as a whole not materially misleading.

[8] Judicial candidates are sometimes the subject of false, misleading, or unfair allegations made by opposing candidates, third parties, or the media. For example, false or misleading statements might be made regarding the identity, present position, experience, qualifications, or judicial rulings of a candidate. In other situations, false or misleading allegations may be made that bear upon a candidate's integrity or fitness for judicial office. As long as the candidate does not violate paragraphs (A)(10), (A)(11), or (A)(12), the candidate may make a factually accurate public response. In addition, when an independent third party has made false attacks on a candidate's opponent, the candidate should disavow the attacks, and request the third party to cease and desist.

[9] Subject to paragraph (A)(11), a judicial candidate is permitted to respond directly to false, misleading, or unfair allegations made against him or her during a campaign, although it is preferable for someone else to respond if the allegations relate to a pending case.

[10] Paragraph (A)(11) prohibits judicial candidates from making comments that might impair the fairness of pending or impending judicial proceedings. This provision does not restrict arguments or statements to the court or jury by a lawyer who is a judicial candidate, or rulings, statements, or instructions by a judge that may appropriately affect the outcome of a matter.

*Pledges, Promises, or Commitments Inconsistent With Impartial Performance of the Adjudicative Duties of Judicial Office*

[11] The role of a judge is different from that of a legislator or executive branch official, even when the judge is subject to public election. Campaigns for judicial office must be conducted differently from campaigns for other offices. The narrowly drafted restrictions upon political and campaign activities of judicial candidates provided in Canon 4 allow candidates to conduct campaigns that provide voters with sufficient information to permit them to distinguish between candidates and make informed electoral choices.

[12] Paragraph (A)(12) makes applicable to both judges and judicial candidates the prohibition that applies to judges in Rule 2.11(B), relating to pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

[13] The making of a pledge, promise, or commitment is not dependent upon, or limited to, the use of any specific words or phrases; instead, the totality of the statement must be examined to determine if a reasonable person would believe that the candidate for judicial office has

specifically undertaken to reach a particular result. Pledges, promises, or commitments must be contrasted with statements or announcements of personal views on legal, political, or other issues, which are not prohibited. When making such statements, a judge should acknowledge the overarching judicial obligation to apply and uphold the law, without regard to his or her personal views.

[14] A judicial candidate may make campaign promises related to judicial organization, administration, and court management, such as a promise to dispose of a backlog of cases, start court sessions on time, or avoid favoritism in appointments and hiring. A candidate may also pledge to take action outside the courtroom, such as working toward an improved jury selection system, or advocating for more funds to improve the physical plant and amenities of the courthouse.

[15] Judicial candidates may receive questionnaires or requests for interviews from the media and from issue advocacy or other community organizations that seek to learn their views on disputed or controversial legal or political issues. Paragraph (A)(12) does not specifically address judicial responses to such inquiries. Depending upon the wording and format of such questionnaires, candidates' responses might be viewed as pledges, promises, or commitments to perform the adjudicative duties of office other than in an impartial way. To avoid violating paragraph (A)(12), therefore, candidates who respond to media and other inquiries should also give assurances that they will keep an open mind and will carry out their adjudicative duties faithfully and impartially if elected. Candidates who do not respond may state their reasons for not responding, such as the danger that answering might be perceived by a reasonable person as undermining a successful candidate's independence or impartiality, or that it might lead to frequent disqualification. See Rule 2.12.

## RULE 4.2
### Political and Campaign Activities of Judicial Candidates in Public Elections

**(A) A judicial candidate\* shall:**

> **(1) act at all times in a manner consistent with the independence,\* integrity,\* and impartiality\* of the judiciary;**
>
> **(2) comply with all applicable election, election campaign, and election campaign fund-raising laws\* and regulations of this jurisdiction;**
>
> **(3) review and approve the content of all campaign statements and materials produced by the candidate or his or her campaign committee, as authorized by Rule 4.4, before their dissemination; and**
>
> **(4) take objectively reasonable measures to ensure that other persons do not undertake on behalf of the candidate activities, other than those described in Rule 4.4, that the candidate is prohibited from doing by Rule 4.1.**

**(B) A candidate for elective judicial office may, unless prohibited by law:**

**(1) establish a campaign committee pursuant to the provisions of Rule 4.4;**

**(2) speak on behalf of his or her candidacy through any medium, including but not limited to advertisements, websites, or other campaign literature;**

**(3) publicly support or oppose candidates for judicial office;**

**(4) attend or purchase tickets for dinners or other events sponsored by a political organization\* or a candidate for judicial office;**

**(5) seek, accept, or use endorsements from any person or organization other than a partisan political organization or partisan\* or independent\* office-holder or candidate for non-judicial public office; and**

**(6) contribute to a candidate for judicial office, but not more than the amount prescribed by law.**

## COMMENT

[1] Paragraph (B) permits judicial candidates in public elections to engage in some political and campaign activities otherwise prohibited by Rule 4.1.

[2] Despite paragraph (B), judicial candidates for public election remain subject to many of the provisions of Rule 4.1. For example, a candidate continues to be prohibited from soliciting funds for a political organization, or any partisan or independent office-holder or candidate for public office, from knowingly making false or misleading statements during a campaign, or making certain promises, pledges, or commitments related to future adjudicative duties. See Rule 4.1(A), subparagraphs (4), (10), and (12).

[3] In judicial elections, paragraph (B)(5) prohibits a candidate from seeking, accepting, or using nominations or endorsements from a partisan political organization or a partisan or independent non-judicial office-holder or candidate for public office.

[4] Judicial candidates are permitted to attend or purchase tickets for dinners and other events sponsored by political organizations or judicial candidates, but not by partisan or other independent office-holders or candidates for public office.

[5] In endorsing or opposing another judicial candidate, the judge or judicial candidate doing so must abide by the same rules governing campaign conduct and speech as apply to the candidate's own campaign.

**RULE 4.3**
*Activities of Candidates for Appointive Judicial Office*

**A candidate for appointment to judicial office may:**

**(A) communicate with the appointing or confirming authority, including any selection, screening, or nominating commission or similar agency; and**

**(B) seek endorsements for the appointment from any person or organization other than a political organization.***

**COMMENT**

[1] When seeking support or endorsement, or when communicating directly with an appointing or confirming authority, a candidate for appointive judicial office must not make any pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office. See Rule 4.1(A)(12).

**RULE 4.4**
*Campaign Committees*

**(A) A judicial candidate* subject to public election* may establish a campaign committee to manage and conduct a campaign for the candidate, subject to the provisions of this Code. The candidate is responsible for ensuring that his or her campaign committee complies with applicable provisions of this Code and other applicable law.***

**(B) A judicial candidate who establishes a campaign committee shall direct his or her campaign committee:**

> **(1) to solicit and accept only such campaign contributions* as are permitted by law;**

> **(2) not to solicit or accept contributions for a candidate's campaign in an amount or in a manner that is prohibited by law; and**

> **(3) to comply with all applicable statutory requirements for disclosure and divestiture of campaign contributions, and to file all reports required by law with the official or agency prescribed by law.**

**COMMENT**

[1] This Rule recognizes that judicial candidates may raise campaign funds in an amount and in a manner permitted by law to support their candidacies, and permits candidates, other than candidates for appointive judicial office, to solicit financial or in-kind campaign contributions personally or to establish campaign committees to solicit and accept such contributions.

41

[2] Campaign committees may solicit and accept campaign contributions, manage the expenditure of campaign funds, and generally conduct campaigns. Candidates are responsible for compliance with the requirements of election law and other applicable law, and for the activities of their campaign committees.

[3] If a campaign committee is established, the candidate must instruct the campaign committee to solicit or accept contributions in conformity with applicable law.